UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Ashland)

| | |
|---|---|
| HOLLY SUE LYKINS WAGGONER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 0: 16-084-DCR |
| ) | |
| V. ) | |
| ) | |
| NANCY A. BERRYHILL, Acting ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security[1], ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Holly Sue Lykins Waggoner ("Waggoner") [Record No. 10] and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner"). [Record No. 12] For the reasons that follow, the Commissioner's motion will be granted and the relief that Waggoner seeks will be denied.

**I.**

On February 15, 2006, Administrative Law Judge ("ALJ") Andrew J. Chwalibog determined that Waggoner was able to perform light and sedentary work and was not disabled under the Social Security Act ("Act"). [Tr. 104] Waggoner later filed an application for disability insurance benefits ("DIB") on May 17, 2006 through her attorney Eric Conn, alleging a disability beginning on March 13, 2004. [Tr. 241] Her claim was denied initially and on reconsideration. [Tr. 116-19] Waggoner then requested an administrative hearing

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. She is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

-1-

before an ALJ. [Tr. 248] ALJ David B. Daugherty did not hold a hearing and determined that Waggoner was disabled based largely on Dr. Frederic Huffnagle's opinion. [Tr. 127-28]

After finding reason to believe that fraud was involved in the decision to award benefits in Waggoner's case, the Social Security Administration notified Waggoner that it would be redetermining her claim for benefits from the onset date through the date of the decision. [Tr. 173] It specifically identified evidence that Eric Conn submitted, including evidence from Dr. Frederic Huffnagle, as being suspected of fraud. [*Id*.] The agency thus informed Waggoner that any evidence from Dr. Huffnagle would be disregarded during the redetermination process. [*Id*.] On redetermination, Waggoner was permitted to submit additional evidence in support of her original claim for benefits. [Tr. 175] The agency would then evaluate the legitimate evidence that she initially presented along with any additional evidence and determine whether she had a disability from the alleged onset date through the date of the decision. [*Id*.]

Following an administrative hearing, ALJ Paul Guaghen concluded that Waggoner was not disabled from the alleged onset date through the date of the prior decision. [Tr. 20] She then sought review by the Appeals Council, which was denied. [Tr. 1] Waggoner has exhausted her administrative remedies and this case is ripe for review pursuant to 42 U.S.C. § 405(g).

## II.

Waggoner was 48 years old on the date that she applied for DIB. [Tr. 241] She has a 7th grade education and has previous employment as a certified nurse's assistant. [Tr. 259, 264] The claimant worked as a certified nurse's assistant from 1990-93 and then again from 1995-2004. [Tr. 259] Waggoner alleged inability to work due to chronic obstructive

pulmonary disease ("COPD"), emphysema, bronchial asthma, depression, insomnia, leg pain, heart problems, ankle problems, urinary incontinence, lower back pain, high blood pressure, high cholesterol, and diabetes. [Tr. 258]

At various times during the relevant time period, Waggoner was diagnosed with: mild coronary artery disease [Tr. 367]; COPD [Tr. 728]; fibromyalgia [Tr. 671, 803]; cervical disc disease with disc protrusions [Tr. 741]; disc herniation [Tr. 848]; depression and anxiety [Tr. 699-705, 722-24]; and problems sleeping [Tr. 672, 699-705]. Waggoner was diagnosed with a fracture and torn ligament in her ankle in July 2004. [Tr. 340] She obtained an operation to address these injuries. [*Id*.] The physician reported that her "[f]inal x-ray was good" and she "left the Operating Room in good condition." [*Id*.] In 2005 a plate and screws were removed from ankle, and the physician reported that Waggoner "left the Operating Room in good condition." [Tr. 348] She later indicated that the pain in her ankle had improved as a result of the surgery. [Tr. 673]

Dr. Tim Garner treated Waggoner for urinary incontinence in March 2005. [Tr. 349] He assessed the claimant with mixed urinary incontinence and scheduled urodynamic studies. [Tr. 350] These studies revealed normal findings. [Tr. 351] She obtained a vaginal sling to address her condition. [Tr. 360] The physician stated that Waggoner "tolerated the procedure well." [*Id*.] She later reported that her symptoms significantly improved as a result of the procedure. [Tr. 672]

Treatment notes from January 2006 reflect that Waggoner complained of pain "all over." [Tr. 670] She was diagnosed with fibromyalgia in February 2006. [Tr. 699-70] The physician recommended physical therapy and prescribed Neurontin. [Tr. 670] Treatment

notes state that the Neurontin "helped with the pain . . . ." [Tr. 671] Physicians later noted "multiple arthralgias/myalgias" in November 2006. [Tr. 728]

Waggoner was given a cardiac catheterization in June 2004, which revealed mild coronary artery disease. [Tr. 367] She also had COPD. [*Id.*] Treatment records from throughout 2004 indicate that she reported a cough but that her breathing improved with medication that her condition generally had improved. [Tr. 673-80, 727] She obtained a second cardiac catheterization in December 2006. [Tr. 840] The physician reported that the operation was successful. [Tr. 843]

Waggoner was referred for an MRI in September 2006 after complaining of neck pain. [Tr. 741] The MRI showed minimal annular bulging at C3/4 and a protrusion at C5/6. [*Id.*] In March 2007, Waggoner obtained an MRI of the lumbar spine. [Tr. 848] The findings were of L4/L5 and L5/S1 disc herniations. [*Id.*]

Waggoner was given a disability examination in July 2006. [Tr. 687] She claimed disability due to fibromyalgia, lung problems, and depression. [*Id.*] Dr. Barry Burchett reported that Waggoner ambulated with a normal gait, did not require the use of a handheld assistive device, and was comfortable in supine and sitting positions. [Tr. 689] Waggoner appeared depressed and had a frequent cough. [*Id.*] Dr. Burchett reported that he "would guess that 16 of 18 trigger-points are tender" but that the evaluation was "difficult to verify" because "most control points are also sensitive . . . ." [*Id.*] Dr. Burchett noted that the claimant did not have shortness of breath following minimal exertion but had probable asthma, probable chronic bronchitis, and possible emphysema. [Tr. 691] Pulmonary functioning was in the range of normal and an EKG was unremarkable. [*Id.*] Additionally, she had normal range of

motion in all areas tested, a negative straight leg test in sitting and supine positions, and 5/5 strength in upper and lower extremities. [Tr. 689, 690, 692]

Dr. William R. Rigby also evaluated Waggoner for disability in July 2006. [Tr. 699] He remarked that her gait was normal, she used no assistive devices, and there was no appearance of invalidism. [Tr. 700] He noted "inadequacies of personality" and that Waggoner appeared "tired and lacking in stamina." [*Id*.] Dr. Rigby concluded that she appeared "free of major mental health problems . . . ." [Tr. 703] Waggoner reported a range of depressive symptoms, which Dr. Rigby stated "appeared moderate in degree and chronic in nature . . . ." [*Id*.] Waggoner also described anxiety symptoms. [*Id*.] Dr. Rigby found psychological conditions of dysthymia and anxiety disorder, and stated that these conditions were "likely to continue indefinitely and . . . improve or worsen in correlation with physical problems." [Tr. 704] However, he opined that Waggoner appeared "to have good ability to understand, retain, and follow simple instructions and good ability to sustain attention to perform simple repetitive tasks" and "fair ability to relate to . . . fellow workers and supervisors and fair ability to tolerate stress and pressures with work activity." [*Id*.]

In September 2006, a state agency consultant concluded that Waggoner's mental impairments were not severe. [Tr. 719] In November 2006, another state agency consultant reviewed Waggoner's mental impairments and affirmed this finding. [Tr. 748-59]

During the administrative hearing before ALJ Gaughen, Waggoner testified she had to stop working as a certified nurse assistant in 2004 because of her pain. [Tr. 59] The claimant stated that she was unable to work in a less strenuous position because she was not able to lift things, it hurt her to stretch, and it hurt to bend. [Tr. 63] She asserted that she was unable to

stand for longer than 15 minutes or walk more than 50 feet without stopping to rest, and that lifting any more than 5 pounds would be painful. [Tr. 64]

Waggoner reported that her daily activities involved spending "a lot of time laying trying to get comfortable" and not doing "much of anything." [Tr. 76] She left her home primarily for doctor's appointments or to go to the grocery store, where she would walk through the store and shop. [*Id*.] Waggoner testified that her sister lived behind her and would help her "with what needed to be done." [Tr. 77] She stated that she was unable to complete chores. [Tr. 80]

Waggoner also testified that she had a manual wheelchair that she only needed to be part of the time, and that she used while grocery shopping. [Tr. 79] She states that she began using the wheelchair after she injured her ankle. [*Id*.]

The VE then testified, and the ALJ presented the following hypothetical of a person with the capacity for:

> Some light exertion, as that is defined in the Dictionary of Occupational Titles, but not a full range of it.
>
> Assume that she could do forward bending or stooping occasionally and capacity to lift or carry objects is also occasional for the criteria set out for light work using occasional in the DOT.
>
> She could not operate foot controls as part of a job or occupation. She could not keep up with fast paced production demands nor would she be a candidate to work at unprotected heights or in driving industrial equipment nor should she work at a place where there's temperature extremes or extremes of humidity.
>
> Overall, what's being laid out here is she couldn't tolerate unusual work stressors or work in dangerous conditions. The worker presents with capacity to work on the feet for six hours out of eight in a day and for give or take two hours at one time. She could work seated for at least six hours of an eight-hour day and for two at one time, with some allotment for a sit/stand alternating option.

> The individual could be expected to work for eight of eight, and there is not a frequent need to change positions.

[Tr. 82] The ALJ further clarified that, during a normal workday, the hypothetical person would "spend three-quarters of the time working on the feet, if needed, and sporadically for periods that would be certainly less than [an] hour, she could continue work but in a chair or on a stool." [Tr. 83] The VE concluded that this hypothetical person could work as cashier II, document preparer, and escort vehicle driver. [Tr. 83-84]

Waggoner's attorney then modified the question such that the hypothetical person could not bend or stoop, could stand no more than 25 to 30 minutes at a time, and could sit no more than 25 to 30 minutes at a time. [Tr. 84] The VE replied that a person with such additional limitations could not be an escort vehicle driver; could still work as a document preparer; and could work as a cashier II, but there would be fewer cashier II jobs available for this hypothetical person. [Tr. 84-85] The attorney then further modified the question to include frequent breaks due to urinary incontinence, and the VE further eroded the available cashier II positions. [Tr. 87] Waggoner's attorney imposed an additional modification for fibromyalgia pain and cervical pain that caused the hypothetical person to be unable to concentrate, and the VE stated that this modification eliminated all jobs. [Tr. 88] Finally, the attorney modified the original question such that the hypothetical person would need to stop working for 45 minutes at a time to recover, and the VE concluded that this limitation would eliminate all jobs. [Tr. 91]

ALJ Gaughen found severe impairments of residual effects of ankle fracture, disc herniation, fibromyalgia, COPD, and coronary artery disease. [Tr. 31] He concluded that the claimant's impairments of urinary incontinence, hypertension, hyperlipidemia, diabetes, major

depressive disorder and anxiety disorder were not severe. [*Id*.] He further determined that Waggoner did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. [Tr. 33]

Next, the ALJ found that Waggoner had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) except that the beneficiary could occasionally forward bend, stoop or lift/carry objects for light work and can never operate foot controls. The beneficiary cannot keep up with fast-paced production demands and cannot perform work involving unprotected heights, driving industrial equipment, temperature extremes or humidity extremes. Additionally, the beneficiary cannot tolerate unusual work stressors or work in dangerous conditions. The beneficiary can work on the feet for 6 hours in an 8-hour work day for 2 hours at a time. After being on the feet, the beneficiary could be off-feet for less than an hour while continuing work. With some allotment for a sit/stand option, the beneficiary could work 8 of 8 hours. There is not a frequent need to change positions.

[Tr. 34]

Based on the evidence presented, the ALJ concluded that Waggoner experienced symptoms from her physical impairments. [Tr. 35] However, the issue was "the degree of her symptoms and whether [they] cause disabling limitations." [*Id*.] He found multiple inconsistencies between the evidence and Waggoner's own assertions regarding her symptoms. [Tr. 35-36] For example, the consultative examiner noted that she had normal gait and normal range of motion in all of her extremities, but Waggoner testified that she required the use of a wheelchair. [Tr. 36] Additionally, she continued to smoke despite alleging breathing problems, and the record also indicated that her breathing problems improved with medication. [*Id*.]

The ALJ considered Dr. Rigby's opinion regarding Waggoner's mental impairments, but assigned it partial weight because it was internally inconsistent in some respects. [Tr. 37]

He adopted the state agency doctor's findings that Waggoner's mental health impairments were not severe. [*Id*.] He also declined to consider the hypotheticals that Waggoner's attorney presented to the VE, stating that these questions were not supported by the evidence. [*Id*.]

Based on the VE's testimony the ALJ concluded that there were jobs that Waggoner could have performed which existed in significant numbers in the national economy during the relevant time period. [Tr. 38] As a result of the foregoing findings, the ALJ concluded that Waggoner was not disabled under the Act. [Tr. 39]

### III.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the requirements of the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months and that meets or equals a listed impairment, she will be considered disabled without

regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine whether she can perform his past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

Waggoner presents five arguments for consideration. Her first argument is that the reconsideration process violated her rights under the Due Process Clause. However, Waggoner did not raise this claim in her Complaint. [Record No. 1] The Complaint does not mention the redetermination process at all, much less state a claim that the process amounted to a violation of the Due Process Clause. Instead, she states only that the Commissioner's decision "is not supported by substantial evidence and is contrary to the law and evidence . . . ." [*Id.*]

A plaintiff is not entitled to raise a claim for the first time at the summary judgment stage. *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (noting that the appropriate procedure is to amend the complaint and that permitting a plaintiff to raise a claim for the first on summary judgment "would subject defendants to unfair surprise"). In *Bristol v. Comm'r of Soc. Sec.*, 408 Fed. Appx. 956 (6th Cir. 2011), the claimant raised due process claims in the motion for summary judgment, but those claims were not in the complaint and the claimant did not attempt to amend the complaint to assert them. The Sixth Circuit recognized that a complaint may be constructively amended if the parties fully litigate an issue that was not included in the complaint. *Id*. at 957. However, because the Commissioner did not address the claims in its motion for summary judgment, the complaint had not been constructively amended and the due process claims were not properly raised. *Id*. (citing *Tucker*, 407 F.3d at 787-89). The Sixth Circuit thus, like the district court, declined to consider the claims. *Id*.

Waggoner's Complaint does not include a Due Process claim and the Complaint has not been constructively amended to include the claim. The Commissioner begins her argument

relating to the Due Process claim by stating that Waggoner waived this claim by failing to raise it in the Complaint.  Accordingly, the Complaint was not constructively amended and still fails to assert the Due Process claim that Waggoner now seeks to have this Court address.  Because the Complaint does not raise the claim, it is not properly raised on summary judgment and this Court declines to consider it.

Waggoner's remaining arguments address the ALJ's consideration of the evidence.  She cites to various aspects of the medical evidence and the ALJ's conclusion regarding her RFC and argues that the ALJ evaluated the evidence improperly and thus that his conclusions were incorrect.  Although her arguments are difficult to follow, Waggoner appears to effectively argue that the ALJ's determination regarding her RFC was not supported by substantial evidence and raises various challenges based on specific aspects of the RFC finding.

Substantial evidence exists when a "reasonable mind might accept" the relevant evidence "as adequate to support a conclusion." *Kirk v. Sec. of Health and Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  As long as there is substantial evidence to support the ALJ's decision, it will be upheld, "even if there is substantial evidence in the record that would have supported an opposite conclusion . . . ." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (citation omitted).

Waggoner specifically addresses fibromyalgia and argues that the ALJ improperly gave her diagnoses for this condition insufficient weight.  Here, the record reflects that Waggoner was diagnosed with fibromyalgia and that she was prescribed Neurontin for this condition.  [Tr. 671]  However, the record lacks a medical opinion regarding the severity of this condition or its effect on Waggoner's ability to work.  Accordingly, the evidence regarding the impact

-12-

of the fibromyalgia comes from Waggoner herself, who testified that her pain rendered her unable to work. [Tr. 59-64]

A claimant's subjective complaints of pain "can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (citation omitted). However, "an ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability." *Cruse*, 502 F.3d at 542. The ALJ's determinations regarding a claimant's credibility are accorded significant deference "since the ALJ is charged with observing the claimant's demeanor and credibility." *Id*. (citation omitted). These findings will be upheld if they are supported by substantial evidence. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

Here, the ALJ considered the fibromyalgia diagnosis and stated that he found that Waggoner did experience symptoms from her conditions but that she was not credible regarding the "degree of her symptoms and whether [they] cause disabling symptoms." [Tr. 15, 16] He noted the consultative examination of Dr. Barry Burchett, who concluded that a fibromyalgia diagnosis was difficult to verify because most of Waggoner's control points were sensitive. [Tr. 16] The ALJ also cited Dr. Burchett's notes that Waggoner walked with a normal gait, did not require a handheld device, and had a normal range of motion in all of her extremities and her spine. [*Id.*] In contrast to these notes, Waggoner testified that she required the use of a wheelchair during the relevant period. [Tr. 79] The ALJ concluded that Waggoner's allegations of her disabling pain were discredited by Dr. Burchett's report regarding her ability to walk and the full range of motion in her extremities and spine. [Tr. 16-17]

There is substantial evidence to support the ALJ's credibility determination. Waggoner's records contain very little objective evidence regarding her fibromyalgia and she has not introduced any medical evidence suggesting that her condition would be reasonably expected to produce disabling pain. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The record shows that Waggoner was diagnosed with fibromyalgia in early 2006, and was prescribed medication at that time.[2] However, the Court was unable to locate any further evidence relating to this diagnosis for the remainder of the relevant period, through April 2007, and the Plaintiff did not identify any. The absence of further treatment or discussion of this condition supports the ALJ's conclusion that Waggoner exaggerated its severity. Additionally, Dr. Burchett's opinion that the fibromyalgia diagnosis was difficult to verify also provides evidence that the condition was less severe than alleged. [Tr. 689] Likewise, the report that she was able to walk normally and had a full range of motion in her extremities weakens her allegations of disabling pain. [*Id.*]

Waggoner also asserted that the ALJ "significantly disregarded [Waggoner's] breathing problems in assessing her RFC . . . ." But she does not explain what further limitations her breathing problems would impose beyond those listed in the RFC, or how her breathing problems would prevent her from performing light, primarily sedentary work. Without this explanation there is no reason to conclude that the RFC that Waggoner was assigned would not accommodate whatever breathing problems she claims. In any event, the ALJ specifically discussed Waggoner's breathing problems and his conclusion that they were

---

[2] As Waggoner points out, the ALJ did incorrectly state that she was not prescribed pain medication. However, this misstatement does not amount to error if there is substantial evidence to support the ALJ's determination. *See Wright*, 321 F.3d at 614.

not especially limiting is supported by substantial evidence. First, she continued to smoke cigarettes daily, which suggested that she was not as impaired in her breathing as she suggested.³ [Tr. 16, 701] Additionally, the records reflect that her breathing and overall condition had improved with medication. [Tr. 673-80, 727] Dr. Burchett found that her lungs were clear and she did not exhibit shortness of breath with exertion or while lying flat. [Tr. 691]

Waggoner's third argument consists of numerous citations to various portions of the record. Waggoner does not cite to any legal authority in this section. Likewise, she fails to provide any indication of what relief to which the unexplained portions of the record entitle her. The Court is unable to evaluate this argument because it is unable to discern what, if any, argument Waggoner is attempting to make. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal quotation marks and citation omitted).

Next, Waggoner argues that the ALJ improperly discounted the opinion of consultative examiner William R. Rigby, who opined on Waggoner's mental impairments. Although ALJs are required to consider the findings of consultative examiners, they "are not bound by" their findings. 20 C.F.R. § 404.1527(2)(i). As a result, ALJs are not required to even discuss a consultative examiner's opinion in their decisions, much less provide reasons for the weight

---

³     Waggoner makes much of the fact that the record reflects that she had reduced her smoking, but the fact remains that for much of the relevant time period, she was smoking some number of cigarettes daily. [Tr. 701]

-15-

assigned to their opinions. *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 468 (6th Cir. 2004). It thus follows that ALJs are free to assign appropriate weight to a consultative examiner's opinion based on all evidence in the record.

As an initial matter, the ALJ discussed Dr. Rigby's opinion and gave reasons for his decision to give it partial weight, which not only complies with the regulations but also goes beyond what the regulations require. [Tr. 18] However, even if the ALJ did improperly fail to give controlling weight to Dr. Rigby's opinion, giving it controlling weight would not have affected Waggoner's disability status because the opinion does not support a finding of additional mental limitations. Dr. Rigby stated that Waggoner appeared "free of major mental health problems . . . ." [Tr. 703] Although Dr. Rigby found anxiety and depression, he concluded that Waggoner appeared "to have good ability to understand, retain, and follow simple instructions and good ability to sustain attention to perform simple repetitive tasks" and "fair ability to relate to . . . fellow workers and supervisors and fair ability to tolerate stress and pressures with work activity." [Tr. 704] This opinion is consistent with the ALJ's RFC finding.

Finally, Waggoner challenges the ALJ's hypothetical question, arguing that it overstated her RFC and "disregarded the combined effects of her impairments." The claimant does not describe the impairments or specify which limitations should have been imposed. She cites generally to limitations suggested by Waggoner's counsel during the administrative hearing, but does not cite to any evidence demonstrating additional limitations that the ALJ should have included in the hypothetical question but did not. Again, while these deficiencies make Waggoner's argument difficult to evaluate, the record reflects that the argument lacks merit because the ALJ's hypothetical question was proper.

An ALJ's hypothetical question to the VE must accurately portray the claimant's abilities and limitations. *Brantley v. Comm'r of Soc. Sec.*, 637 Fed. Appx. 888, 897 (6th Cir. 2016). However, the hypothetical question "need not include a comprehensive list of a claimant's medical conditions." *Id*. (citation omitted). Further, the ALJ is only required to include a limitation if he finds it credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The ALJ's hypothetical question largely mirrored his RFC determination which, as will be discussed, was supported by substantial evidence. Additionally, the suggested limitations are unsupported by the evidence and the ALJ was thus not required to include them in the hypothetical question. Waggoner's attorney proposed greater limitations that are presumably based on Waggoner's allegations of pain—greater limitations on her ability to stand and sit for extended periods of time and greater limitations on her ability to maintain focus. [Tr. 84-91] As previously discussed, the ALJ did not find the alleged severity of Waggoner's pain symptoms credible, and he is not required to include limitations that he did not find credible. Additionally, Waggoner's attorney suggested a limitation based on Waggoner's urinary incontinence. [Tr. 86] The record, however, reflects that Waggoner underwent surgery for this condition and that condition improved following the operation. [Tr. 360, 672] Waggoner did not identify any evidence that urinary incontinence continued to be an issue after the surgery. She has thus failed to demonstrate that the ALJ was required to include this limitation in the hypothetical question.

Regarding Waggoner's arguments collectively, her challenges to the ALJ's RFC determination fail because the determination is supported by substantial evidence. First, regarding Waggoner's subjective assertions of disabling pain, the ALJ concluded that these

-17-

assertions were not credible. As discussed previously, the ALJ's credibility determination on this issue is supported by substantial evidence. [Tr. 34, 82] There is also substantial evidence to support the ALJ's finding regarding Waggoner's limitations in movement. Dr. Burchett noted that Waggoner walked with a normal gait without use of an assistive device, had a normal range of motion in all areas tested, and also had full strength in her upper and lower extremities. [Tr. 689, 690, 692] Additionally, Waggoner reported that the condition of her ankle had improved after she obtained surgery. [Tr. 673] Regarding her neck and back pain, an MRI did report bulging, a protrusion, and disc herniations, but beyond these assessments, Waggoner does not identify any evidence in the record that these conditions caused her any significant difficulty or that she was being treated for these conditions. [Tr. 741, 848] The only other evidence is Waggoner's assertion of pain symptoms, which, as previously discussed, the ALJ properly determined was not credible. There is thus substantial evidence to support the ALJ's RFC finding that Waggoner could perform light work.[4]

Substantial evidence also supports the ALJ's determination that Waggoner's mental limitations did not inhibit her ability to do the unskilled work identified at step five. Waggoner has been diagnosed with anxiety and depression. [Tr. 703] However, the record supports a finding that these conditions do not inhibit her ability to work. Dr. Rigby opined that she had "good ability to understand, retain, and follow simple instructions and good ability to sustain attention to perform simple repetitive tasks" and "fair ability to relate to . . . fellow workers and supervisors and fair ability to tolerate stress and pressures with work activity." [Tr. 704]

---

[4] For the reasons previously stated, the record does not support a finding of additional limitations for Waggoner's urinary incontinence. The ALJ thus did not err by declining to include this in his RFC determination.

Similarly, two state agency consultants concluded that Waggoner's mental impairments were not severe. [Tr. 719, 748-59][5]

### V.

Waggoner did not include a claim that her Due Process Clause rights were violated in her Complaint, so the claim is waived and will not be considered. Her remaining arguments regarding the ALJ's consideration of the evidence also fail. Broadly, there was substantial evidence to support the ALJ's determination regarding her RFC. Specifically, the ALJ's credibility determination is supported by substantial evidence. The ALJ also gave consultative examiner Dr. Rigby's opinion the required consideration but even if he did not, the opinion would not have supported a finding of mental limitations. Finally, the hypothetical question posed to the VE properly accounted for Waggoner's limitations. Accordingly, it is hereby

**ORDERED** as follows:

1. The Commissioner's Motion for Summary Judgment [Record No. 12] is **GRANTED**.

2. The Plaintiff's Motion for Summary Judgment [Record No. 10] is **DENIED**.

This 24th day of March, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

---

[5] Waggoner vaguely references problems sleeping, and identifies some support in the record, but fails to demonstrate that these problems amount to limitations that should be accounted for in the RFC.